## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

                    Plaintiff,

v.

DAVID BERNHARDT, in his official
capacity as Secretary of the Interior; and
UNITED STATES BUREAU OF LAND
MANAGEMENT,

                    Defendants.

No. 1:19-cv-00505-SCY

## MOTION OF THE AMERICAN PETROLEUM INSTITUTE FOR LEAVE TO INTERVENE AS A DEFENDANT

Pursuant to Fed. R. Civ. P. 24, the American Petroleum Institute ("API") respectfully moves for leave to intervene in the above-captioned matter. Counsel for API consulted with counsel for Plaintiff and the Federal Defendants regarding the relief requested herein. Plaintiff indicated that it will not oppose intervention by API. The Federal Defendants indicated that they will take no position until after reviewing the filed motion.

### BACKGROUND

**A.  Plaintiff's Legal Challenge.**

This lawsuit challenges the approval of oil and gas leasing and the issuance of oil and gas leases through three lease sales on public lands in the New Mexico conducted by Defendants Bureau of Land Management ("BLM") and the Secretary of the Interior (collectively, the "Federal Defendants"). *See* Petition for Review (Dkt. No. 1), ¶ 1. As a whole, companies invested more than $1 billion in bonuses to obtain the leases issued in the Federal Defendants' challenged leasing

decisions.  Plaintiff WildEarth Guardians ("Plaintiff") contends that the Federal Defendants' leasing actions violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*  *See* Petition, ¶¶ 1, 6–7. Plaintiff alleges that the Federal Defendants "failed to acknowledge or analyze the serious environmental consequences" of the challenged leasing decisions, "including potentially significant impacts to climate, air quality, and water resources" from future oil and gas development operations such as "horizontal drilling and multi-stage fracturing."  *Id.*, ¶ 2.

To remedy the alleged violations, Plaintiff asks the Court to, *inter alia,* (1) "[d]eclare that Defendants' Leasing Authorizations violate NEPA, FLPMA, [and] the APA"; (2) "[v]acate and remand Defendants' Leasing Authorizations"; (3) "[e]njoin Defendants from any further leasing authorizations within the Pecos District pending Defendants' full compliance"; and (4) "[e]njoin Federal Defendants from approving or otherwise taking action on any pending or future applications for permits to drill on the leases included in the lease sales challenged herein until Federal Defendants have fully complied with NEPA . . . ."  *Id.*, Relief Requested, ¶¶ A–D.

## B.    API's Interest in Plaintiff's Legal Challenge.

API is the primary national trade association of the oil and natural gas industry, representing more than 625 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil.  *See* Declaration of Erik Milito, ¶ 1 ("Milito Decl.") (attached as Exhibit 1 hereto).  Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. *See* Milito Decl. ¶ 2.

2

API members are deeply engaged in the exploration for and development of oil and gas resources, and their interests are directly affected by the instant legal challenge. *See infra* pp. 5–11. To protect their interests, API is entitled to intervene in this action as of right, or, in the alternative, through permissive intervention. Indeed, numerous federal courts, including this Court, have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging Governmental actions with respect to oil and gas activities across the country, including but not limited to oil and gas lease sales. *See Diné Citizens Against Ruining our Envt. v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) (intervened in challenges to drilling permits).[1]

## ARGUMENT

## I.   API IS ENTITLED TO INTERVENE AS OF RIGHT.

Fed. R. Civ. P. 24(a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant claims a legally protectable interest relating

---

[1] *See also, e.g.*, *Wilderness Workshop, et al. v. U.S. Bureau of Land Mgmt.*, No. 18-cv-987-WYD, Dkt. No. 15, (D. Colo. Aug. 16, 2018); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (intervened in challenge to five-year leasing program); *Defenders of Wildlife v. Bur. of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (intervened in challenge to lease sales and agency use of categorical exclusions to approve exploration plans); *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 17-cv-372, Dkt. No. 52 (S.D. Ohio Sept. 29, 2017) (intervened in challenge to lease sales in Wayne National Forest); *League of Conservation Voters v. Trump*, No. 17-cv-101, Dkt. No. 22 (D. Ak. July 21, 2017) (intervened in challenge to presidential authority to resume oil and gas leasing on previously withdrawn lands); *WildEarth Guardians v. Jewell*, No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) (intervened in challenges to lease sales in Colorado, Utah and Wyoming); *Envtl. Defense Ctr. v. Bur. of Safety & Envtl. Enforcement*, No. 14-cv-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) (same); *Oceana v. Bur. of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (intervened in challenge to lease sales); *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Alaska 2013) (intervened in challenge to geological and geophysical survey permit); *Defenders of Wildlife v. Minerals Mgmt. Serv.*, No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (intervened in challenge to lease sale).

(continued…)

to the property or transaction which is the subject of the action; (3) the interest could be impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's interests. Fed. R. Civ. P. 24 (a). *See also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (explaining that the Tenth Circuit follows "a somewhat liberal line in allowing intervention" based on "the practical effect of the litigation on the applicant for intervention" (quotations omitted)); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). API's intervention satisfies each of these criteria.[2]

## A.   API Has Timely Moved For Intervention.

This motion to intervene is timely because it has been filed roughly "two months after the [Plaintiff] filed" its lawsuit, *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) ("Given how early in the lawsuit the groups moved to intervene, and, as a result, the lack of

---

[2] For purposes of applying Rule 24 requirements, API may assert the interests of its members. An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See*, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000); *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). API's showing that its members' economic interests in this litigation meet the Fed. R. Civ. P. 24 standards also demonstrates that its members would themselves have standing. *See infra* pp. 5–11. *Cf. Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001). Representation in litigation is germane to API's overall purpose of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see also Sierra Club v. Glickman*, 82 F.3d 106, 108–10 (5th Cir. 1996) (goals of suit to limit farmers' water pumping germane to association purpose to advance farmers' interests); Milito Decl. ¶ 2. It is not necessary for API members to be included in this case individually, especially because no monetary relief is being sought. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977). API thus satisfies the three requirements of associational standing.

(continued...)

4

prejudice to the [plaintiff], we agree with the district court's determination that the motion was timely."), and before the Federal Defendants have responded to the Petition for Review.[3]

## B.   API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding.

Oil and gas development on federal lands is carried out exclusively through private oil and gas companies, which acquire leases through a competitive bidding process and then engage in exploration efforts that, if successful, will lead to production. *See*, *e.g.*, 30 U.S.C. §§ 181, 187; 43 C.F.R., Part 3100; Milito Decl. ¶ 5. API members have bid significant sums to obtain leases from the Government for the opportunity to explore for and develop valuable oil and gas resources, including in New Mexico. *See* Milito Decl. ¶ 5. At least one API member holds leases directly challenged by Plaintiff in this action. *See* Milito Decl. ¶ 7.

Operations for the exploration and development of oil and gas resources on a lease—including drilling operations—are conducted pursuant to plans and permits that must be approved by the BLM. *See* 43 C.F.R. §§ 3160.0-1, *et seq.*; Milito Decl. ¶¶ 6, 8. Operations on federal lands are important for the long-term viability of many companies and help to generate returns on investments by thousands of shareholders, including public pension funds, individual retirement plans, local governments, universities, and individual investors. *See* Milito Decl. ¶ 6 API members are directly engaged in such exploration and production, and have been for decades

---

[3] Because the Petition for Review seeks review of an administrative record pursuant to the APA, the case is governed by the Federal Rules of Appellate Procedure, and no answer is required. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579–80 (10th Cir. 1994). *See also*, *e.g.*, *San Diego Cattlemen's Coop. Ass'n v. Vilsack*, No. 2015 WL 12866452, at *4 (D.N.M. April 20, 2015) (denying Plaintiff's motion to require federal defendants to file an answer in lawsuit brought under the APA); *WildEarth Guardians v. U.S. Forest Serv.*, 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009) ("Pursuant to *Olenhouse* . . . , claims under the APA are treated as appeals and governed by reference to the Federal Rules of Appellate Procedure."). API denies that federal laws have been violated by the Federal Defendants, and will brief the merits of Plaintiff's Petition for Review after intervention is granted.

among the principal explorers and developers of leases throughout the United States. *See* Milito Decl. ¶ 8. API members also include service companies that provide a wide variety of support services for the exploration and development of onshore oil and gas leases. *See* Milito Decl. ¶ 9.

Plaintiff's claims that (1) the Federal Defendants must conduct further NEPA environmental reviews of the challenged oil and gas leasing decisions, Petition ¶¶ 291–311; (2) the Federal Defendants' illegally instituted guidance to streamline the leasing process, *id.*, ¶ 312–34; and (3) the Court should therefore "[v]acate and remand" the leasing decisions and "[e]njoin" any approval of drilling operations on the issued leases *see id.*, Relief Requested, ¶¶ B, D, thus directly affect the members' interests. These interests include the property, contractual, and other business interests of existing leaseholders in retaining and developing their purchased leases, *see* Milito Decl. ¶¶ 5–8, the interests of API members in bidding on future leases, *see* Milito Decl. ¶¶ 5–6, and the interests of member companies that provide support services—including materials, equipment, well completion, and other support services—for exploration and development activities on existing leases. *See* Milito Decl. ¶ 9. At a minimum, the requested injunction, pending a potentially lengthy NEPA review process, could substantially delay the activities of API's members. *See* Milito Decl. ¶ 11.

"[A] would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *WildEarth Guardians*, 573 F.3d at 995 (quotation omitted). Here, although Governmental agencies and officials are named as the defendants, in practice the exploration and drilling activities of API members are the "subject of" the agency action that Plaintiff's lawsuit challenges—Federal Defendants' issuance of oil and gas leases for potential future oil and gas exploration and development activities. This clearly qualifies API for intervention as of right. *See Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002)

(party has standing when its activities are the ultimate object of the legal challenge); *see also*, *e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *In re City of Fall River, Ma.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to import natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Ultimately, Plaintiff asks this Court to end the activities of API members. *See* Petition, Relief Requested, ¶¶ B–D. Private parties may intervene in defense of challenged conduct when their interests could thus be directly implicated. *See WildEarth Guardians*, 573 F.3d at 995 (finding sufficient interest where agency approval of activities on party's property is the "subject of" NEPA lawsuit); *id.* at 996 ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." (quotation omitted)); *Fund for Animals*, 322 F.3d at 733 (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.") *WildEarth Guardians*, 2016 WL 660123, at *2 (holding that owners of mines subject to the challenged NEPA review "have an obvious, significant interest" in the litigation).

In this regard, API's members are in a similar situation as the members of the association seeking intervention in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998). The plaintiffs there challenged an EPA rule excluding munitions from stringent hazardous waste regulation, and the D.C. Circuit held that the Chemical Manufacturers Association ("CMA") had standing to intervene in defense of the EPA rule:

> CMA has standing because some of its members produce military munitions and operate military firing ranges regulated under the Military Munitions Rule. These companies are directly subject to the challenged Rule, and they benefit from the EPA's "intended use" interpretation (under which most military munitions at firing ranges are not solid waste) . . . that the [petitioner] is challenging in this appeal. These CMA members would suffer concrete injury if the court grants the relief petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.

*Military Toxics*, 146 F.3d at 954.

API likewise has Article III standing—and thus a sufficient interest to support intervention—because its members currently own leases and have the opportunity to conduct, *inter alia*, exploration, development, and drilling operations on issued leases with BLM approval. *See supra*. API members are thus engaged in activities that are "directly subject to the challenged" Government policy and "would suffer concrete injury if the court grants the relief petitioners seek," *i.e.*, voiding the leasing decisions and enjoining approval of certain development operations on issued leases. *Military Toxics*, 146 F.3d at 954. *See also*, *e.g.*, *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had Article III standing and sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"); *Fund for Animals*, 322 F.3d at 733–34 (agreeing that Article III standing exists where "injury is fairly traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying lawsuit" and "it is likely that a decision favorable to the [applicant for intervention] would prevent that loss from occurring"); *id.* at 734 (in identifying a

8

qualifying injury under Rule 24(a), "we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property"); *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 282, 285 (D.C. Cir. 2003) (intervention by trade association of utilities regulated by EPA regulation).

Moreover, standing is satisfied and intervention warranted here by an additional consideration. Oil and gas leases constitute both contracts, *see, e.g.*, *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607–08 (2000), and property interests, *see, e.g.*, *Union Oil Co. v. United States*, 512 F.2d 743, 747 (9th Cir. 1975). By seeking to forestall exploration or development of already purchased leases, Plaintiff would cause an injury to at least one API member by requesting "an agency [action] that replaces a certain [contract] outcome with one that contains uncertainty." *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002). *See also Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 967 (D.C. Cir. 1999) (granting intervention by party "which purchased the great majority of the licenses awarded" under the existing rule); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests.").

In addition, API's members undoubtedly satisfy prudential standing in this litigation because their activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation omitted)—namely, the Federal Defendants' issuance to them of leases. Furthermore, the interests of API members correspond with the Mineral Leasing Act's purpose "to provide wise development of [oil and gas] natural resources," *see California v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961), NEPA's similar "national policy" to "encourage productive and enjoyable harmony between man and his environment," 42 U.S.C. § 4321, and the FLPMA's policy to manage public lands "in a manner which recognizes the

9

Nation's need for domestic sources of minerals," 43 U.S.C. § 1701(a)(12). *See* Milito Decl. ¶ 2.

*See also, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (With respect to prudential standing, a

party's interests need only "*arguably* fall within the zone of interests protected *or regulated* by the

statutory provision" at issue) (emphasis added); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–

400 (1987) (holding that trade associations had standing, because even "[i]n cases where the

plaintiff is not itself the subject of the contested regulatory action, the [zone of interest] test denies

a right of review [only] if the plaintiff's interests are so marginally related to or inconsistent with

the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to

permit the suit. The test is not meant to be especially demanding; in particular, there need be no

indication of congressional purpose to benefit the would-be plaintiff.").

Finally, the Court's disposition of this action would impair the ability of API (and its

members) to protect its interests. The impairment prong of Rule 24(a) "look[s] to the practical

consequences of denying intervention." *Natural Res. Def. Council v. Costle*, 561 F.3d 904, 909

(D.C. Cir. 1977) (quotation omitted). This element "presents a minimal burden." *WildEarth

Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010). It is irrelevant whether the

applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no

question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult

and burdensome." *Fund for Animals*, 322 F.3d at 735. *See also WildEarth Guardians*, 604 F.3d

at 1199 (noting interest may be impaired even if proposed intervenor had the ability to participate

in remanded administrative process).

Here, one or more API members *currently* own leases and have the opportunity to obtain

approval of (or conduct) development activities through reviews conducted by the Federal

Defendants, and would face practical difficulty in restoring the status quo following a victory by

Plaintiff voiding the leasing decisions, enjoining approval of members' development operations, and requiring Federal Defendants to conduct additional environmental reviews. At a minimum, such action would impose a lengthy administrative delay and related costs and uncertainty upon API members. *See Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted). *Cf. Humane Society of the U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (sufficient interest of recreational hunting and trapping groups in "present right of their members to hunt and trap on public lands"). At worst, any subsequent lawsuit filed by API to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, thereby supporting intervention in this initial lawsuit. *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011). *See also WildEarth Guardians*, 604 F.3d at 1199 ("[F]or purposes of Rule 24(a)(2), sufficient impairment may result even from the *stare decisis* effect of a district court's judgment." (quotation omitted)).

For all these reasons, API is entitled to intervene. Indeed, federal appellate and district courts have routinely and repeatedly permitted oil industry trade associations to intervene on behalf of their members' interests in litigation involving oil and gas leasing and operations. *See supra* n.1; *see also e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466 (D.C. Cir. 2009) (API granted intervention in challenge to Government's five-year OCS leasing program under NEPA and OCS Lands Act); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (same); *California v. Watt*, 668 F.2d 1290, 1294 n.1 (D.C. Cir. 1981) (same); *Alaska v. Andrus*, 580 F.2d 465 (D.C. Cir.

11

1978) (trade association granted intervention in defense of first OCS lease sale offshore Alaska); *Suffolk Cnty. v. Sec'y of the Interior*, 562 F.2d 1368 (2d Cir. 1977) (trade association granted intervention in defense of first Atlantic OCS lease sale).

## C.     API's Interests Will Not Be Adequately Protected By Plaintiff Or Defendants.

An applicant for intervention need only show that representation of its interest by an existing party "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972). The burden of the applicant in meeting that test is "minimal." *Id. See also*, *e.g.*, *WildEarth Guardians*, 573 F.3d at 996 ("[T]he possibility of divergence of interest need not be great in order to satisfy the burden," and the movant "need only show the *possibility* of inadequate representation." (quotations omitted) (emphasis original)).

In this case, Plaintiff's position is inimical to that of API, and the Federal Defendants' "obligation is to represent the interests of the American people . . . while [the Associations'] concern is for" the interests of their members. *See Fund for Animals*, 322 F.3d at 736 (granting intervention). As the Supreme Court explained in *Trbovich*, a government agency cannot be characterized as able adequately to represent the interests of an intervenor if the agency has substantially similar interests to a potential intervenor, but has a statutory charge to pursue a different goal as well. *Trbovich*, 404 U.S. at 538–39. Here, while the goals of the Mineral Leasing Act include the interest of API's members in "wise development" of oil and gas resources on public land, *see Udall*, 296 F.2d at 388, the Government's statutory goals—including those imposed by NEPA and the FLPMA—are not limited to those interests, *see*, *e.g.*, 43 U.S.C. § 1701(a); 42 U.S.C. § 4321. Although the Federal Defendants' and API's interests could be expected to coincide in defending the claim of violations asserted in this action, these differing goals support API's intervention as of right.

Moreover, as the Tenth Circuit has explained, the inadequate representation "showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent . . . the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." *WildEarth Guardians*, 573 F.3d at 996 (quotation omitted). Here, BLM "has multiple objectives and could well decide to embrace some of the environmental goals" of the Plaintiff at the expense of the economic interests of API's members. *Id.* at 997. *See also Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986) (explaining that Government "is charged by law with representing the public interest of [all] its citizens" rather than the "narrow and 'parochial' financial interest" of intervenor); *Pueblo of Jemez v. United States*, No. 12-cv-800, 2016 WL 8136015, at *3 (D.N.M. Sept. 20, 2016) ("[T]he Tenth Circuit has recognized that a governmental defendant often cannot adequately represent the interests of a non-governmental party."). Because the interests of API's members "cannot be subsumed within the shared interests of the citizens [at large], no presumption exists that the [Government] will adequately represent [their] interests." *Dimond*, 792 F.3d at 193. *See also WildEarth Guardians*, 604 F.3d at 1200 (noting Tenth Circuit has "repeatedly recognized that it is on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor" (quotation omitted)); *Fund for Animals*, 322 F.3d at 736–37 (noting that "tactical similarity" with parties "does not assure adequacy of representation") (citation omitted); *Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007) (finding representation inadequate where applicant "has a financial interest . . . that is not an interest shared by the public").

Because its interests are not adequately represented by either the Plaintiff or the Federal Defendants, API should be allowed to intervene in this case as of right.

## II.   IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b).

Fed. R. Civ. P. 24(b)(1) and (3) provide in pertinent part:

On timely motion, the court may permit anyone to intervene who . . . has a claim
or defense that shares with the main action a common question of law or fact . . . .
In exercising its discretion, the court must consider whether the intervention will
unduly delay or prejudice the adjudication of the rights of the original parties....

API's and the Federal Defendants' defenses to the Petition for Review will involve

common questions of law—for example, the standards imposed by NEPA, the FLPMA, and the

Administrative Procedure Act—and fact regarding the Federal Defendants' fulfillment of their

obligations under the statutes upon which the Petition for Review relies.  In addition, as shown

above, API has a substantial interest in the outcome of this litigation.  Moreover, this litigation's

basic simplicity as a primarily legal dispute belies any concern that API's intervention will result

in prejudice to the original parties, and, at any rate, API's intervention vindicates "a major premise

of intervention—the protection of third parties affected by pending litigation." *Kleissler v. U.S.*

*Forest Serv.*, 157 F.3d 964, 971 (3rd Cir. 1998).  Finally, API applied to intervene in a timely

manner, and no delay or prejudice can be shown to the rights of the original parties herein.  Thus,

if the Court did not allow API to intervene as of right, it should allow API permissive intervention

in the exercise of its sound discretion.

### CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both

Fed. R. Civ. P. 24(a) and 24(b).  API respectfully requests that this Court grant this motion for

leave to intervene in this proceeding without limitation.[4]  A proposed Order is submitted herewith.

---

[4] *See WildEarth Guardians*, 2016 WL 660123, at *3 (refusing to impose limitations on intervenors
at the outset because "imposing those limitations could . . . prevent Movants from effectively
(continued…)

Respectfully submitted,

MALDEGEN, TEMPLEMAN & INDALL LLP

Jon J. Indall
1925 Aspen Drive, 200A
Santa Fe, NM 87505
Phone: 505-216-3075
jindall@cmtisantafe.com

August 2, 2019

Steven J. Rosenbaum
(*pro hac vice* forthcoming)
Bradley K. Ervin
(*pro hac vice* forthcoming)
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
Fax: (202) 662-6291
srosenbaum@cov.com
bervin@cov.com

*Attorneys for Applicant for Intervention*

---

representing their interests, which is the very purpose of their intervention"); *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (finding "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation…without limitation"); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1922 (3d ed. 2010) (questioning authority of courts to impose conditions on intervenor-of-right beyond those of a housekeeping nature).

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2019, I caused a true and correct copy of

the foregoing Motion for Leave to Intervene and all accompanying attachments, to be filed with

the Court electronically and served by the Court's CM/ECF System upon the following:

Daniel L. Timmons
Samantha Ruscavage-Barz
WildEarth Guardians
301 N. Guadeloupe St., Suite 201
Santa Fe, New Mexico 87501
Tel.: (505) 570-7014
dtimmons@wildearthguardians.org
sruscavagebarz@wildearthguardians.org

*Counsel for Plaintiff*

Caitlin M. Cipicchio
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street, N.E.
Washington, D.C. 20002
Phone: (202) 305-0503
caitlin.cipicchio@usdoj.gov

Clare Boronow
U.S. Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1362
clare.boronow@usdoj.gov

*Counsel for Federal Defendants*

Jon J. Indall