IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

      Plaintiff,

v.                                                                                       No. 1:19-cv-00505-RB-SCY

DAVID BERNHARDT, in his official capacity
as U.S. Secretary of the Interior, and UNITED
STATES BUREAU OF LAND MANAGEMENT,

      Defendants.

## MEMORANDUM OPINION AND ORDER

WildEarth Guardians (WildEarth), an environmentally-focused non-profit organization, brought suit against U.S. Secretary of the Interior David Bernhardt and the U.S. Bureau of Land Management (collectively BLM) for approving oil and gas leases on public land in New Mexico. Still in the early stages of this litigation, the American Petroleum Institute (API) and the Western Energy Alliance (WEA)—both trade groups representing the oil and gas industry—filed motions to intervene as defendants. BLM takes no position on the motion. WildEarth does not oppose API but argues that API adequately represents WEA's interests, so WEA should not be allowed to intervene as of right. Given that these two groups represent different constituencies, each with their own interests in the litigation, the Court will grant both motions to intervene as of right.

**I.**     **Background**

WildEarth is a "non-profit membership organization" headquartered in Santa Fe, New Mexico. (Doc. 1 (Compl.) ¶ 14.) It is composed of approximately 231,000 members who endeavor to "protect[] and restore[] the wildlife, wild places, wild rivers and health of the American West."

(*Id.*) WildEarth's aim is to "replace fossil fuels with clean, renewable energy in order to safeguard public health, the environment, and the Earth's climate." (*Id.*)

On June 3, 2019, WildEarth filed suit against BLM for approving certain oil and gas leases across more than 68,232 acres of public land in New Mexico. (*Id.* ¶ 1.) It contends that approval of these leases contravenes the National Environmental Policy Act (NEPA), the Federal Land Policy and Management Act (FLPMA), and the Administrative Procedure Act (APA). (*Id.*) Precisely, WildEarth claims that BLM failed to adequately assess the environmental impact on energy operations in the region. (*Id.* ¶ 256–88.) As a result, WildEarth requests (a) a declaration that BLM violated NEPA, FLPMA, and the APA; (b) that the lease authorization be vacated and remanded; (c) an injunction against BLM until it complies with federal law; and (d) an injunction against further approvals. (*Id.* ¶¶ A–I.)

On August 2, 2019, API moved the Court to intervene as a defendant under Federal Rule of Civil Procedure 24. (Doc. 12.) "API is the primary national trade association of the oil and natural gas industry, representing more than 625 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil." (*Id.* at 2.) At that time, counsel conferred, and WildEarth indicated to API that it would not oppose intervention. (*Id.* at 1.) A month later on September 16, 2019, WEA also moved the court to intervene as a defendant. (Doc. 20.) WEA "represents over 300 members involved in all aspects of environmentally responsible exploration and production of oil and natural gas on federal and Indian lands across the western United States . . . ." (*Id.* ¶ 2.)

This time in response, WildEarth challenged WEA's intervention as a matter of right because API "adequately represent[s] WEA's interests in this litigation." (Doc. 24 at 1.) WildEarth further stated that it would not oppose permissive intervention under certain circumstances.

Specifically, it now requests that both intervenors: (a) "[file] briefs in accordance with the date for the Federal Defendants," (b) "[limit] their arguments to the existing (or amended) claims," (c) "[confer] with the Federal Defendants before filing any motion or response brief . . . ," and (d) "[submit] joint consolidated motions and memoranda . . . ." (*Id.* at 1–2.)

## II. Legal Standard

Federal Rule of Civil Procedure 24 allows for intervention as of right if "[o]n timely motion," the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). At the same time, if no intervention as of right exists, "the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Id.* 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3).

## III. Discussion

### a. API's Intervention

API contends that it should be able to intervene as of right, or "in the alternative, through permissive intervention." (Doc. 12 at 3.) It has an interest in the matter because its "members are deeply engaged in the exploration for and development of oil and gas resources, and their interests are directly affected by the instant legal challenge." (*Id.*) It further claims to have "routinely . . . intervene[d] in lawsuits brought by plaintiffs challenging Governmental actions . . . ." (*Id.*)

First, API argues that it timely moved to intervene, filing its motion approximately two months after the commencement of this suit. (*Id.* at 4.) Next, it posits that its interests may be

impaired if excluded because its members frequently operate on federal lands, and these practices "are important for the long-term viability of many companies . . . ." (*Id.* at 5.) Given that API's members "own leases" subject to BLM policies, it has standing to enter this matter as a defendant. (*Id.* at 8.) Finally, API suggests that its interests "will not be adequately protected by Plaintiff or Defendants." (*Id.* at 12.) Specifically, API's goal is the "'wise development' of oil and gas resources on public land," while the "Government's statutory goals—including those imposed by NEPA and FLPMA—are not limited to those interests." (*Id.* (citations omitted).) WildEarth did not file a response within 14 days and does not oppose API's intervention. (Doc. 24 at 1.)

Based on API's representations, the Court will allow intervention. First, courts have not set forth a specific timeframe for intervention, but rather, they consider the underlying factual circumstances. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). Courts also consider whether there exists any "prejudice to the existing parties" or "prejudice to the movants." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010). API filed its Motion to Intervene only two months after WildEarth filed the Complaint (Doc. 1), and nearly a month before BLM filed its Answer (Doc. 22). Given this prompt intervention, it is difficult for this Court to imagine any resulting prejudice, and WildEarth has not shown concern that any prejudice exists.

Next, where the court's decision affects a party's interests, that party may intervene to protect those interests. *See San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013). The "interest is measured in terms of its relationship to the property or transaction that is the subject of the action," *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010), and the standard only imposes a "minimal" burden, *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). Here, API members have spent "more than $1 billion" in attaining these

leases. (Doc. 12 at 1.) Any decision the court makes reversing, limiting, or even stalling access to that land would affect API members. Moreover, it would have implications for any future land development that these oil and gas companies pursue.

Finally, the intervening party must "show that the representation by the existing parties may be inadequate, but this burden is minimal." *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (internal quotation marks and citations omitted). The intervening party need only demonstrate a "possibility" that its interests diverge from the other defendants. *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978). Beyond its specific interest in developing public land, BLM carries with it the broader interests of the government and the American people. This constituency stretches far beyond ALI's representation of 625 member companies. While the parties may share similar goals and make similar arguments, because BLM's interests are so vast, a real possibility exists that party interests may diverge during the litigation. In applying Rule 24, it is obvious that API may intervene in this matter as of right, and the Court will grant its Motion to Intervene.

b. **WEA's Intervention**[1]

WEA first argues that its members have an interest in the litigation, holding that WildEarth aims to end its members' property rights in the oil and gas leases. (Doc. 20 at 8.) Further, its mission of advocacy creates a general interest in "ensuring BLM's leasing policies promote

---

[1] WEA begins with the standing question. It argues that it has standing because: its members have standing; "the interests at stake are germane to the organization's purpose[;] and neither claim asserted nor the relief requested requires the participation of individual members . . . ." (Doc. 20 at 7 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).) As an intervenor, it also argues that it need not have standing, unless its requested relief differs from an existing party. (*Id.* (citing *Kane Cty., Utah v. United States*, 928 F.3d 877, 886 (10th Cir. 2019)).) Given that WildEarth does not challenge standing and that it is well known that associations may sue on behalf of their members, the Court will not address this issue here.

environmentally responsible oil and gas development" (*Id.* (citation omitted).) Finally, despite sharing some overlapping goals with BLM, there is no "guarantee that BLM will adequately represent the Alliance's interests." (*Id.* at 13.) In the alternative, WEA claims to qualify for permissive intervention because it shares "common questions of law or fact with both Plaintiff's claims and the defenses BLM is likely to raise." (*Id.*) Further, "[n]one of the existing parties will be able to provide the detailed understanding of member companies' historic and anticipated operations that the Alliance can provide." (*Id.* at 14.)

Despite not opposing API's intervention, WildEarth filed a response to WEA's Motion. (Doc. 24.) It argued that API would "adequately represent WEA's interests in this litigation," (*id.* at 1), and that their goals in the lawsuit are "identical." (*Id.* at 4.) Regarding BLM, WEA shares the goals of "upholding the challenged leases and maintaining the regulatory status quo," and with API, WEA "has made no attempt to distinguish its interests." (*Id.* at 5.) At the same time, WildEarth does not "oppose permissive intervention subject to reasonable limitations on WEA's and API's participation in this case to preserve judicial resources and avoid an unfair burden on [WildEarth]." (*Id.* at 1.)

The Court applies to WEA the same standards under Rule 24 used to render the decision on API above. While WEA filed its Motion about a month after API's and about three months after the Complaint, it was still filed before BLM's Answer. At this early stage of litigation, there again is no argument that intervention would prejudice any party. WEA's interests in the matter stem from its representing over 300 oil and gas companies, many of which hold leases at issue. Once more, a decision from the Court that alters the leasing rights would affect WEA.

The core of WildEarth's opposition, however, is that WEA holds identical interests to API, which could adequately represent it throughout the litigation. (Doc. 24 at 1.) WildEarth believes

6

that API and WEA are "aligned in their objective of protecting their financial interests by protecting the leases of their members and maintaining the industrial status quo of oil and gas development in the Greater Carlsbad region." (Doc. 24 at 5.) Therefore, no right of intervention exists.

API does not oppose WEA's involvement and contends that they represent differing interests: "Unlike WEA's representation of its specific leaseholding members and BLM policy positions, API represents leaseholders, lease operators, and service companies, and indeed companies throughout the chain of oil and gas development . . . ." (Doc. 25 at 4–5.) API's interests are "significantly broader than WEA's." (*Id.* at 5.) In fact, "both have been permitted separately to intervene and brief one of Plaintiff's own previous challenges to BLM oil and gas lease sales." (*Id.* (citing *WildEarth Guardians v. Jewell*, No. 16-cv-01724, Doc. 19 (D.D.C. Nov. 23, 2016)).)

WEA agrees. Neither BLM nor API adequately represent WEA. The fact that BLM and WEA "deny all violations" and maintain "common goals" is not evidence of perfect alignment. (Doc. 27 at 2.) BLM's representation of the government and its citizens signifies interests well beyond WEA's. Regarding API, WEA argues that "the organizations' membership and objectives vary." (*Id.* at 4.) WEA's "members are focused on the 'upstream' segment of the oil and gas industry and are typically small businesses, having an average of fourteen employees." (*Id.*) API, however, represents the oil and gas industry broadly. (*Id.*) Given these differences, there have been several lawsuits filed against BLM where only one of these parties participated—indicating frequent differences. (*Id.* (citing *W. Energy All. v. Jewell*, No. 1:16-cv-00912 (D.N.M.)).)

After considering the arguments, the Court holds that WEA may intervene as of right. The Tenth Circuit has held that intervention of right "does not apply . . . when interests are aligned." *San Juan Cty.*, 503 F.3d at 1204. Or rather, adequate representation exists "when the *objective* of

7

the applicant for intervention is *identical* to that of one of the parties." *City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (internal quotation marks and citation omitted) (emphasis added). Here, both parties share general interests. Both represent oil and gas companies in the region, and both desire that BLM policy remain unchanged. That said, API's members span the gamut of the oil and gas industry—from small exploration companies to large-scale distributors, whereas WEA's members are limited to smaller exploration and production companies in the Western United States. Certainly these groups overlap in many respects, but there are significant differences. And the Court reads *City of Stilwell*'s requirement that the parties have identical objectives as a high hurdle. API's broader interests and representation of companies throughout the value chain bring different perspectives to the matter that WEA's narrower constituency might not perceive. Conversely, WEA's focused defense of its members will likely produce different tactics that API would not pursue. While their high-level objectives may intersect, their strategies and arguments throughout the litigation to achieve those objectives will likely diverge. As a result, the Court will grant WEA's Motion to Intervene.

   c. **Conditions on Intervention**

While the Court granted intervention as of right for both API and WEA, it should still consider whether to impose reasonable conditions on their participation. *Cf.* Fed R. Civ. P. 24(a) advisory committee note on 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). WildEarth argues that if WEA is also allowed to intervene, the Court should enact "reasonable conditions" on their participation. (*Id.*) Specifically, it asks the parties to: (a) follow BLM's briefing schedule; (b) limit their briefing to BLM's arguments; (c) confer to avoid duplication; and (d) submit joint briefs. API counters that

this request for conditions is untimely. (Doc. 25 at 1–2.) Given that WildEarth did not oppose API's intervention, it cannot restrict its participation because another party now seeks to intervene. (*Id.*) Further, WEA argues that "imposing limitations on briefing is a matter for a case management conference, not a motion to intervene." (Doc. 27 at 5.)

Again, the Court largely agrees with API and WEA. These proposed conditions are premature. Forcing API and WEA to limit their arguments to BLM's would defeat the purpose of intervention as of right. The Court has decided that both parties can independently join the case as defendants. It would be counterintuitive to restrict their participation and force BLM's case strategy on them. The same could be said of joint briefing. Such a condition would water down API and WEA's arguments, obscuring their divergent interests. The Court will also not allow restrictions on the briefing schedule at this time, as that is a matter for the case management conference. Finally, the one condition the Court will impose, however, is that the parties confer ahead of time to limit duplicate briefing. Obviously, the parties are working from the same set of facts and making similar arguments, but the parties should remain cognizant of judicial resources. Therefore, the Court will deny three of the conditions but request that the parties confer throughout the litigation to avoid repetitive briefing.

**THEREFORE,**

**IT IS ORDERED** that API's Motion to Intervene (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that WEA's Motion to Intervene (Doc. 20) is **GRANTED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**